UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | |
|---|---|
| **RAYMOND P. DUKE,** ) | |
|        **Plaintiff,** ) | |
| v. ) | |
| ) | Case No. 08-2090 |
| **COMMISSIONER OF SOCIAL SECURITY,** ) | |
| **sued as Michael J. Astrue,** ) | |
| ) | |
|        **Defendant.** ) | |

## REPORT AND RECOMMENDATION

In February 2007, Administrative Law Judge Robert Senander (hereinafter "ALJ") denied disability insurance benefits to Plaintiff Raymond Duke. The ALJ based his decision on findings that although Plaintiff's severe impairments precluded him from performing his past relevant work, Plaintiff was able to perform the requirements of other jobs that exist in significant numbers in the economy.

In April 2008, Plaintiff filed a Complaint (#1) against Defendant Michael Astrue, the Commissioner of Social Security, seeking judicial review of the final decision by the Commissioner of the Social Security Administration denying benefits. In October 2008, Plaintiff filed a Motion for Summary Judgment or Remand (#8), and in November 2008, Defendant filed a Motion for an Order Which Affirms the Commissioner's Decision (#11). In January 2009, Plaintiff filed a Short Reply to Defendant's Memorandum in Support of Motion for Summary Affirmance (#14). After reviewing the administrative record and the parties' memoranda, this Court recommends, pursuant to its authority under 28 U.S.C. § 636(b)(1)(B), that Plaintiff's Motion for Summary Judgment or Remand **(#8)** be **DENIED**.

### I. Background
#### A. Procedural Background

Plaintiff first applied for benefits in February 2005, alleging an onset date of July 26, 2002. The onset date was amended at the hearing to August 8, 2003. His application was denied initially in August 2005, and again upon reconsideration in February 2006. Plaintiff appealed,

and the ALJ held a hearing in February 2007, at which Plaintiff testified. Plaintiff was represented at the hearing by attorney Matthew Edwards. Glee Ann Kehr, a vocational expert, also testified. In February 2007, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act because Plaintiff can perform the requirements of jobs that exist in significant numbers in the economy, and denied his application for benefits. Plaintiff filed a request for review of the hearing decision, which the Appeals Council denied in November 2007, making the ALJ's decision the final decision of the Commissioner. Plaintiff subsequently appealed the decision to this Court under 42 U.S.C. § 405(g).

### B.  Plaintiff's Medical Background

Plaintiff has a history of alcohol abuse. (R. 188.). Plaintiff was in "intensive outpatient" treatment for alcohol dependence from June 2004 to December 2004, at the Riverside Resolve Center. (R. 187-88.) Plaintiff started this treatment due to a DUI he received in March 2004. (R. 188.) After this DUI, Plaintiff also started attending Alcoholics Anonymous (hereinafter "AA") meetings. (R. 70.) Plaintiff stated that in addition to alcohol, he had for several years in the past abused various prescription pills and painkillers. (R. 188.) During this period, in 1998, he received his first DUI when driving while on Ambien, a prescription sleeping medication. (R. 189.) Plaintiff also stated that he had used cocaine and marijuana a few times. (R. 188.) He had apparently been treated for only a few days at the Resolve Center in 2002, but he successfully completed a treatment program at Provena St. Mary's in 2003, and was discharged with a fair prognosis. (R. 187.)

Plaintiff was referred to Dr. Ming Xu in March 2005, after he was informed at AA that failing to get a "spiritual boost" from his sobriety was abnormal and that he needed to see a counselor to determine whether he had other problems. (R. 77.) At his examination, Dr. Xu noted that Plaintiff's mood was a little down, he was not sleeping well, had energy on and off, had poor attention and concentration, was compulsive, had obsessions regarding his inability to find a job, and had symptoms including checking, counting, and pacing at home. (R. 222.) However, Dr. Xu also noted that he had no delusions, no panic attacks or agoraphobia, was alert and oriented in three spheres, had "ok" memory and basic daily function, had normal thought

process, and had appropriate but constricted affect. (R. 222-23.) Dr. Xu assigned a Global Assessment of Functioning (hereinafter "GAF") score of 55-60. (R. 223.) At a follow-up exam almost two months later in May 2005, Dr. Xu noted that Plaintiff's condition had not changed, but he did put a question mark on the examination sheet regarding delusions relating to Plaintiff's inability to find a job. (R. 221.) Dr. Xu diagnosed Plaintiff as having major depressive disorder and obsessive compulsive disorder (hereinafter "OCD"). (R. 221.) He prescribed Zoloft and Risperdal for treatment. (R. 221.)

Two and a half months later, in July 2005, Plaintiff underwent a consultative examination (hereinafter "CE") by licensed clinical psychologist Erwin Baukus, Ph.D., who was selected by the Illinois Disability Determination Service (hereinafter "DDS"). (R. 224-29.) Dr. Baukus reviewed Dr. Xu's treatment notes and examined Plaintiff. (R. 224-29.) Plaintiff reported decreased energy, feelings of guilt and worthlessness, and sleep disturbance that started when he went off of his medications in order to have a clean drug screen for the CE. (R. 226.) However, he reported taking care of his children while his wife was at work, helping with chores around the house, attending church one or two times per week, visiting church friends, occasionally receiving visitors at home, reading, and seeking work on the internet. (R. 227.) Dr. Baukus noted that Plaintiff was alert and well oriented, that his mood was in the normal range, not depressed or elevated, and that he was able to maintain appropriate social behavior. (R. 227.) Plaintiff had no difficulty with calculations, had good abstract thinking, and was apparently successful in memory tests. (R. 228.) Dr. Baukus diagnosed cannabis abuse, history of cocaine abuse, alcohol dependence, and adjustment disorder with depression and anxiety. (R. 228.) Dr. Baukus opined that Plaintiff's symptoms were produced by alcohol and substance abuse, and that the symptoms were exacerbated by his use of alcohol with his medications, causing interactions. (R. 229.)

Three weeks later, in August 2005, state agency medical reviewer Travis Terry examined Plaintiff's medical records and completed a Mental Residual Functional Capacity (hereinafter "RFC") Assessment and a Psychiatric Review Technique form. (R. 232-49.) Mr. Terry opined that Plaintiff was moderately limited in his ability to maintain attention and concentration for

extended periods, to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to maintain social functioning, and to maintain concentration, persistence, or pace.  (R. 232-33, 246.)  Mr. Terry found Plaintiff not significantly limited in his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, to work in coordination with or proximity to others without being distracted by them, to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  (R. 232-33.)  Mr. Terry found no evidence of limitation in Plaintiff's ability to understand, remember, and carry out detailed instructions, and to maintain socially appropriate behavior.  (R. 232-33.)  Mr. Terry concluded that Plaintiff is able to relate appropriately, adapt adequately, and function consistently at a reasonable rate within a schedule, and that he could perform unskilled work.  (R. 234.)

      Four and a half months later, in December 2005, Dr. Xu wrote a letter summarizing his earlier findings and describing his treatment relationship with Plaintiff during the previous nine and a half months.  (R. 251-52.)  Dr. Xu diagnosed Plaintiff as having major depression with anxiety disorder, "rule out OCD."  (R. 252.)  Dr. Xu also recommended psychotherapy and a substance treatment program to deal with Plaintiff's history of substance abuse.  (R. 252.) Dr. Xu noted that Plaintiff responded to his medications reasonably well, and that Dr. Xu had started seeing Plaintiff every three months rather than monthly.  (R. 252.)  Dr. Xu wrote that Plaintiff had good education and work experience, and had tried many places, but had not found a job, which puzzled both Plaintiff and Dr. Xu.  (R. 252.)  Dr. Xu opined that Plaintiff's depression and anxiety would definitely affect his condition in the job market because of their effect on his concentration, energy level, and mood.  (R. 252.)  Dr. Xu stated that his prognosis was reasonably fair, but it is sometimes difficult for a patient who suffers disorders of the kind Plaintiff suffers to get back to normal level.  (R. 252.)

      Just over a year later, in January 2007, Dr. Xu completed a Psychiatric/Psychological Impairment Questionnaire regarding Plaintiff prepared by Plaintiff's counsel.  (R. 273-80.)

Dr. Xu listed some symptoms that were inconsistent with his earlier findings, and added recurrent panic attacks, anhedonia or pervasive loss of interests, perceptual disturbances, social withdrawal or isolation, and irritability. (R. 274.) Dr. Xu noted that Plaintiff had a persistent irrational fear of not being able to find a job. (R. 274.) Regarding Plaintiff's ability to sustain mental activities over a normal workday/workweek, Dr. Xu opined that Plaintiff was effectively precluded from performing most of the listed activities, most notably including working in proximity to others without being distracted by them, interacting appropriately with the general public, accepting instructions and/or criticism from supervisors, and getting along with co-workers without distracting them or exhibiting behavioral extremes. (R. 276-77.) Dr. Xu found that Plaintiff was at least significantly affected by his condition with regard to nearly every listed activity. (R. 276-77.) Dr. Xu also opined that Plaintiff was incapable of tolerating even low work stress (R. 279), and would likely be absent from work most days per month (R. 280). Dr. Xu recorded a GAF of 50 at this time. (R. 273.) Dr. Xu noted that the symptoms and limitations expressed in the questionnaire applied as early as March 2005, just after Plaintiff's first visit with Dr. Xu. (R. 280.)

Plaintiff also has a history of chest pains. He was treated at the Hedges Clinic for hyperlipidemia (R. 197-218), and lab work throughout 2004 showed that Plaintiff has high cholesterol (R. 210, 212-14). Plaintiff was found to have high blood pressure upon admission to the Riverside Resolve Center in June 2004. (R. 189.) Dr. John Jurica examined Plaintiff in March 2005 for chest wall pain and mild left knee pain, and testing revealed high cholesterol and triglycerides. (R. 183, 192-95.) Plaintiff underwent a stress echo in November 2005 that showed normal results. (R. 256-57.) A pulmonary function test in May 2006 showed mild restriction predominantly of extrapulmonary origin. (R. 268.) In June 2006, Dr. Seif Martini examined Plaintiff and found that he has heart palpitations that may be related to his anxiety, a history of hypertension, and elevated triglycerides. (R. 260-61.)

### C. Background and Hearing Before the ALJ

At the hearing, Plaintiff testified that he was born on December 3, 1953, making him 49 years old at the onset date of the alleged disability, and 53 years old at the hearing. (R. 52.)

5

Plaintiff lives with his wife and two children. (R. 52.) He has a bachelor's degree, and completed work toward two master's degrees before quitting both. (R. 54.) Plaintiff testified regarding his past relevant work as a supervisor at pharmaceutical manufacturing and medical instrument manufacturing companies. (R. 56-60.) Plaintiff also has experience as a supervisor of food manufacturing operations (R. 144, 149-50), and as a project analyst for a pharmaceutical company (R. 56-58, 144-45).

Plaintiff testified that he had lost his driver's license because of a DUI, and his license had not been reinstated because of his mental condition. (R. 53.) Plaintiff explained that he has depression and anxiety disorder, which occasionally cause him OCD symptoms. (R. 61-62.) His psychiatrist has informed him that his condition will get progressively worse, and he reported that his symptoms have intensified. (R. 60-61.) At the hearing, he reported symptoms including included not caring about getting anything done, disruptive sleep patterns, a desire to avoid interaction with people, and consequent limitation of previous activities. (R. 62.) His anxiety or OCD-like symptoms include rigid thinking, poor relations with others due to the need to absolutely control situations, actions, and interactions, and a desire to avoid public places. (R. 61.)

Plaintiff additionally testified that he experienced unpleasant side-effects from his psychiatric medications. (R. 62-68.) He testified that his current medication caused him to be unable to stay awake for extended periods of time, and that he falls asleep frequently. (R. 62.) He described a disturbed sleep pattern, in which he can sleep for only three or four hours a night. This exacerbates his inability to stay awake during the day. (R. 63-65.) Additionally, Plaintiff said that his medicine causes him to drool, which he finds humiliating. (R. 62.) Plaintiff testified that his fatigue and inability to concentrate are worst during periods when his medicines are interacting, but that when they are not interacting, he has a "lot of lucidity." (R. 66.) Regarding the amount of his medications, Plaintiff indicated that he takes 50 milligrams of Zoloft most of the time, but sometimes takes 100 milligrams. (R. 78.) He also testified that his Risperdal prescription has increased from .25 milligrams of Risperdal twice per day to 1.0 or 1.5 milligrams, depending on his level of agitation. (R. 78.)

Plaintiff testified that he has limited his activities because of his mental disorders and the effects of his medication. (R. 61-68, 71-74.) He used to play tennis, go swimming, and lift weights, but no longer does these activities. (R. 62.) Additionally, Plaintiff considers it dangerous to use the stove because of his poor memory, and thus he does not do so. (R. 71.) However, Plaintiff did attest to going to church with his family once per week, receiving visitors from church occasionally, making breakfast, occasionally helping his children get ready for school, snow shoveling, and using a snow blower, and he stated that he could probably operate a lawnmower. (R. 65-68.)

Regarding his treatment for chest pains, Plaintiff testified that he has been instructed by his doctor not to do physical exercise, such as tennis or swimming. (R. 76.) Plaintiff's physician told him that the chest pains could either be a heart problem or another symptom of his anxiety or depression. (R. 76.) Plaintiff noted that the chest pains were not an issue with regard to whether or not he could perform work. (R. 76.)

Vocational expert (hereinafter "VE") Glee Ann Kehr also testified at the hearing. She noted that Plaintiff's former positions were categorized as sedentary to light work, and were semi-skilled to skilled in nature. (R. 83.) She testified that a person who could only have incidental contact with the general public, limited contact with co-workers, and could only do one-, two-, or three-step jobs would not be able to do Plaintiff's past relevant work, but could do light, unskilled jobs such as packaging, sorting, or assembly, that exist in significant numbers in the Chicago metropolitan area. (R. 84.) Plaintiff's attorney then questioned the VE about hypothetical RFCs based on Dr. Xu's opinions. (R. 85-88.) VE Kehr testified that a person who would be absent from work three days per month, or one who would be off-task 20-25 percent of the time, would be precluded from any type of employment. (R. 86-87.) She testified that a person who could not even have superficial contact with the public or with supervisors could do very few jobs. (R. 87.)

## D.  The ALJ's Decision

To be entitled to Social Security disability benefits, a plaintiff must show that he is unable to engage in any substantial gainful activity because of a medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of at least twelve months.  42 U.S.C. § 416(i)(1).  To determine disability, the Commissioner uses a five-step sequential evaluation.  20 C.F.R. § 404.1520.  He determines: (1) whether the claimant is presently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, that is, one that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations; (4) whether the claimant has the residual functional capacity to perform his past relevant work; and (5) if the claimant cannot perform the past work, whether the claimant can do other jobs that are available in the national economy.  20 C.F.R. § 404.1520(b)-(d), (f)-(g).  Between steps three and four, the ALJ determines the claimant's residual functional capacity, that is, the work he is still able to perform despite limitations.  20 C.F.R. §§ 404.1520(e), 404.1545.  The claimant bears the burden of production and persuasion at steps one through four.  Once the claimant shows he is unable to perform past work, the burden shifts to the Commissioner to show that the claimant is able to engage in some other type of substantial gainful employment.  *Campbell v. Shalala*, 988 F.2d 741, 743 (7th Cir. 1993).

At the first step, the ALJ found that Plaintiff has not been engaged in substantial gainful activity since the onset date of the alleged disability.  At the second step, the ALJ found that the Plaintiff has severe impairments, those being mood disorder and anxiety.  At the third step, the ALJ determined that Plaintiff's condition did not meet or medically equal any of the impairments listed in the Regulations.  The ALJ noted that Plaintiff's treating psychiatrist had issued an opinion that would support a finding that Plaintiff's conditions meet listings 12.04 and/or 12.06. (R. 30.)  However, the ALJ declined to give controlling weight to this opinion because of perceived inconsistencies between it and an earlier opinion issued by the same doctor. (R. 30-31.)  The ALJ then determined that Plaintiff has the RFC to do a full range of exertional activities, limited to unskilled, one-, two-, or three-step tasks, with incidental contact with the

public and limited contact with co-workers.  In making this RFC assessment, the ALJ found Plaintiff's testimony with regard to the "intensity, persistence, and limiting effects" of his symptoms to be not entirely credible.  (R. 32.)  The ALJ found that the objective medical evidence was inconsistent with Plaintiff's claims, as was his range of activities.  (R. 32.)  The ALJ again pointed out that Dr. Xu's diagnoses were inconsistent with his apparent opinion of Plaintiff's ability to work.  (R. 32.)  Based upon this RFC, at step four, the ALJ determined that Plaintiff was not able to perform his past relevant work.  However, at step five, based on the RFC determination and the VE's testimony, the ALJ concluded that Plaintiff would be able to perform other jobs that exist in the national economy.  As a result, the ALJ found that Plaintiff was not disabled and therefore was not eligible for social security benefits.

## II.  Standard of Review

The Social Security Act authorizes judicial review of the of the Commissioner's final decision, and states that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g).  Substantial evidence is defined by the Supreme Court as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). The question before the Court is not whether a plaintiff is, in fact, disabled, but whether the evidence substantially supports the ALJ's findings.  *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995).  The Court gives considerable deference to the ALJ's credibility findings and will not overturn them unless the plaintiff can show that those findings are patently wrong.  *Urban v. Sullivan*, 799 F. Supp. 908, 912 (C.D. Ill. 1992).

## III. Analysis

Plaintiff contends that the Court should grant summary judgment in his favor or remand this case for the following reasons: (1) the ALJ failed to give adequate weight to the opinion of treating physician Dr. Xu; (2) the ALJ did not evaluate Plaintiff's chest pain; and (3) the ALJ erred by finding Plaintiff not credible.

**A. Weight Given to Dr. Xu's Medical Opinions**

Plaintiff contends that the ALJ erred when he assessed the weight to be given to the medical opinions of treating psychiatrist Dr. Xu. Plaintiff correctly notes that the opinion of a treating physician is generally entitled to controlling weight if it is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence of record. 20 C.F.R. § 404.1527(d)(2). Additionally, if an ALJ does not give a treating physician's opinion controlling weight because of inconsistencies or otherwise, it is not immediately rejected, but must be weighed using the factors listed in § 404.1527(d). SSR 96-2p.

The ALJ declined to give controlling weight to Dr. Xu's opinion when assessing whether Plaintiff's impairments meet or equal any of the listings in the Regulations, and also when determining Plaintiff's RFC and assessing the credibility of his statements about his symptoms. In making these decisions, the ALJ repeatedly pointed out inconsistencies in the opinions of Dr. Xu. Dr. Xu's December 2005 letter describes Plaintiff's condition as he diagnosed it over the course of his treatment since March 2005. Dr. Xu diagnosed major depression with anxiety disorder, and reported symptoms including some depression, sleep problems, poor concentration, energy on and off, obsession with his inability to find a job, and some OCD symptoms that were reasonably okay. (R. 251-52.) Dr. Xu mentioned that despite Plaintiff's education and experience, and attempts, Plaintiff had been unable to find a job. Notably, Dr. Xu expressed puzzlement over this difficulty.

Later, in January 2007, on the psychiatric questionnaire, Dr. Xu recorded several new symptoms, including recurrent panic attacks, psychomotor retardation, perceptual disturbances, and a persistent irrational fear of not being able to find a job. (R. 274.) Additionally, Dr. Xu concluded that Plaintiff's ability to work was severely limited; he opined that Plaintiff was effectively precluded from doing things such as working in proximity to others without being distracted by them, getting along with co-workers without distracting them or exhibiting behavioral extremes, accepting instructions and responding appropriately to criticism from supervisors, and even interacting appropriately with the general public. (R. 276-77.) The ALJ found that the record did not support this degree of change in Plaintiff's condition, and thus he

could not accept the findings of the 2007 questionnaire. In support of this statement, the ALJ explained that Dr. Xu had said in 2005 that Plaintiff was responding to his medication reasonably well, and that he had started seeing Plaintiff less frequently. The ALJ also noted that one of Plaintiff's medications had not changed dosage as of the 2007 opinion, and the other had changed dosage in an amount that was apparently unimpressive to the ALJ. Thus, the ALJ did not accept Dr. Xu's conclusions in the 2007 questionnaire, finding it to be inconsistent with the December 2005 letter and lacking support in the record.

Plaintiff contends that any uncertainty regarding Dr. Xu's opinions required the ALJ to recontact Dr. Xu to clarify the bases for his opinions. Regarding treating sources such as Dr. Xu, the rules require that an ALJ make "every reasonable effort to recontact such sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear to us." SSR 96-5p. However, Defendant points out that if any of the medical evidence is inconsistent, the ALJ is required to weigh the evidence to determine whether a decision can be made as to whether a Plaintiff is disabled based on existing evidence. 20 C.F.R. § 404.1527(c)(2). The duty to recontact only arises if, after weighing the available evidence, the ALJ decides that he cannot reach a conclusion as to whether a claimant is disabled. § 404.1527(c)(3). In this case, the ALJ had other evidence of Plaintiff's condition in addition to Dr. Xu's opinions. For example, in July 2005, during the time period covered by the findings in Dr. Xu's 2007 opinion, Dr. Baukus, a clinical psychologist who performed a consultative examination, reported among other findings that Plaintiff got along with his family, neighbors, and church friends, attended church one or two times per week, visited and was visited by friends, and had the ability to maintain appropriate social behavior. Non examining medical reviewer Travis Terry similarly painted a much more positive picture of Plaintiff's condition based on his review of Plaintiff's records. (R. 232-49.) In light of this evidence and considering the contradictory statements in Dr. Xu's opinions, this Court cannot say that the ALJ erred by determining that he had enough evidence to proceed with a disability decision without recontacting Dr. Xu.

Plaintiff raises several counter-arguments to the ALJ's reasoning. Plaintiff contends that Dr. Xu's opinions were not inconsistent with one another, but rather were consistent and were in fact noted as such on Dr. Xu's 2007 questionnaire. Plaintiff argues, and this Court finds persuasive, that not only were the symptoms described in the two opinions roughly similar, but that Dr. Xu himself noted that the "symptoms and limitations" described in the 2007 opinion applied to Plaintiff as far back as March 15, 2005, which is near the time that Dr. Xu first began to see Plaintiff and well before the December 2005 letter. Plaintiff explains the apparent severe decline in his condition by noting that Dr. Xu had completed the 2007 questionnaire with specific consideration toward Plaintiff's abilities in the job market, whereas the 2005 letter described Plaintiff's condition as it related to his personal activities at home. Although the Court finds nothing in the 2005 letter to suggest that Dr. Xu did not take into account Plaintiff's work-related abilities in formulating his 2005 opinion, the Court agrees with Plaintiff that Dr. Xu's 2005 and 2007 opinions about Plaintiff's diagnoses and symptoms are not inconsistent.

Nevertheless, although Dr. Xu's opinions in the 2005 and 2007 documents regarding Plaintiff's diagnoses and symptoms are not inconsistent with each other, both the 2005 letter and the 2007 questionnaire describe symptoms and impairments that are inconsistent with Plaintiff's ability to work. For example, if Plaintiff is unable to work around others or interact with the general public (R. 276-77), and would miss work most days of the month (R. 280), he would be effectively precluded from all competitive employment (R. 87). However, both documents also contain language indicating that Dr. Xu believes that Plaintiff is able to work; in the 2005 letter, Dr. Xu stated that he was puzzled by Plaintiff's inability to get a job (R. 252), and in the 2007 questionnaire, Dr. Xu stated that Plaintiff had an *irrational* fear that he could not find a job (R. 274), which implies that Dr. Xu thinks he should be able to find a job. Thus, in the 2007 questionnaire, Dr. Xu's description of Plaintiff's condition appears inconsistent with Dr. Xu's apparently continuing belief that Plaintiff is employable.

Regarding Dr. Xu's statement that he was puzzled, Plaintiff argues that the ALJ took Dr. Xu's words in his 2005 letter out of context, and that Dr. Xu explained Plaintiff's joblessness by opining that his impairments affect his condition in the job market. However, after reviewing

these documents, the Court agrees that the documents have inconsistencies that support the ALJ's decision to give them less than controlling weight.

Finally, Plaintiff argues that the ALJ improperly rejected Dr. Xu's opinions entirely instead of weighing them in light of the factors in 20 C.F.R. § 404.1527(d). *See* SSR 96-2p. However, the Seventh Circuit court has held that an ALJ properly rejected a treating physician's opinion in a case in which the opinion contradicted an earlier opinion of that physician without any medical evidence explaining the differences. *See Griffith v. Callahan*, 138 F.3d 1150, 1155 (7th Cir. 1998). Although Dr. Xu's opinions are not inconsistent with one another as to their diagnoses and description of symptoms, the Court has shown that the opinions were internally inconsistent. As a result, the Court concludes that the ALJ did not err by failing to give weight to Dr. Xu's 2007 opinion. The ALJ still considered Dr. Xu's 2005 opinion, stating that it was more useful than the check-box format of the 2007 opinion. In light of the markedly different opinion issued by examining clinical psychologist Dr. Baukus, this Court cannot say that the ALJ erred in the weight he gave the evidence. *Powers v. Apfel*, 207 F.3d 431, 434 (7th Cir. 2000) (courts may not "re-weigh the evidence or substitute [their] own judgment for that of the Commissioner"). Accordingly, the Court recommends denying Plaintiff's motion to remand based on the ALJ's decision not to give weight to Dr. Xu's 2007 opinion.

### B. Consideration of Plaintiff's Physical Illness

Plaintiff next argues that the ALJ erred by failing to consider his physical maladies as well as his psychological issues in formulating his RFC. The Regulations state that an ALJ will consider the combined effect of all of a claimant's impairments in making a disability determination. 20 C.F.R. § 404.1523. Plaintiff has high blood pressure, high cholesterol, and chest pains, and his cardiologist has prohibited him from strenuous physical exercise (including tennis, weightlifting, and swimming (R. 76)), because of a potentially abnormal heart. However, Plaintiff testified that his doctor said that his heart condition was not a disabling factor. (R. 76.) Furthermore, Plaintiff's counsel stipulated that physical limitations were not an issue. (R. 29.)

Based on these facts, the Court concludes that the ALJ did not err by failing to consider Plaintiff's physical condition and recommends denying Plaintiff's motion to remand based on this issue.

### C. The ALJ's Credibility Findings

Finally, Plaintiff argues that the ALJ erred by determining that Plaintiff's statements regarding the "intensity, persistence and limiting effects of [his] symptoms are not entirely credible . . . ."  (R. 32.)

In assessing credibility, the ALJ must consider the objective medical evidence, plus the seven factors mentioned 20 C.F.R. § 404.1529(c)(3), including Plaintiff's daily activities, the characteristics of his symptoms, and the effects of any medications he is on.  SSR 96-7p.  The ALJ also must consider any inconsistencies in the record in making this determination. 20 C.F.R. § 404.1529(c)(4).

The Seventh Circuit has outlined an extremely deferential standard of review regarding credibility.  This Court will set aside the ALJ's findings on credibility only when they are patently wrong.  *Powers*, 207 F.3d at 435.  Furthermore, a court should conclude that a credibility determination is patently wrong only when it "lacks any explanation or support." *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008).

Plaintiff contends that the ALJ's credibility finding rests upon the inconsistency in Dr. Xu's opinions, and reiterates that the ALJ gave these opinions inappropriate weight.  The Court discussed Dr. Xu's opinions above; furthermore, inconsistencies in the record is one of the factors that an ALJ must weigh in making a determination of credibility.  20 C.F.R. § 404.1529(c)(4).  Plaintiff also bases his statement that the ALJ relied solely on Dr. Xu's opinion on the fact that, in Plaintiff's opinion, the SSR 96-7p factors weigh so clearly in Plaintiff's favor that the ALJ must not have considered them.  Plaintiff lists his statements concerning his symptoms and their matching diagnoses in the medical records, which this Court described in the Medical Background and Hearing sections of this Report and will not repeat

here. However, the ALJ's decision shows that he did consider Plaintiff's symptoms among the other factors he weighed in the credibility finding. (R. 32.) The ALJ considered Plaintiff's symptoms, diagnoses, and side effects of medications. (R. 32.) The ALJ also considered Plaintiff's daily activities, including attending church, using the snow blower, getting the mail, watching television, listening to the radio, and what should have been listed as a probable ability to mow the lawn. (R. 32.) The ALJ considered these activities (which he labeled a "full range of activities") along with Plaintiff's search for work and the medical evidence, some of which certainly contradicts Plaintiff's statements concerning his ability to function. (R. 32.) In light of the ALJ's consideration of these factors, this Court cannot say that the ALJ's credibility determination lacks any explanation or support, so as to be found patently wrong. *Elder*, 529 F.3d at 413-14.

Plaintiff also argues that the ALJ's credibility determination is flawed because the ALJ exhibited a lack of objectivity and neutrality in his decision. In discussing Dr. Xu's opinion, the ALJ stated that there was no basis in the record to show a worsening of Plaintiff's condition, unless he had relapsed into drug or alcohol use. (R. 32-33.) Plaintiff contends that this statement had no basis in fact, and that it calls into question the ALJ's objectivity in rendering his decision. The Court disagrees with Plaintiff that this statement indicates a lack of objectivity. The record supports the ALJ's consideration of the possibility of relapse. Plaintiff, a recovered alcoholic, admitted at the ALJ's hearing that he was "not perfectly abstinent" (R. 70) and that he had drunk alcohol two or three months before the hearing (R. 69). Thus, the ALJ did have some basis for using relapse as an example in his opinion. In any event, the ALJ did not say that he thought that Plaintiff actually had relapsed, and this was only an example. Plaintiff has not demonstrated that the ALJ "displayed deep-seated and unequivocal antagonism that would render fair judgment impossible" as is required for a remand because of bias. *Keith v. Barnhart*, 473 F.3d 782, 788 (7th Cir. 2007) (quoting *Liteky v. United States*, 510 U.S. 540, 556 (1994)). Accordingly, the Court recommends denying the Motion for Summary Judgment or Remand based on the ALJ's credibility determination.

## IV. Summary

For the reasons set forth above, the Court recommends that Plaintiff's Motion for Summary Judgment or Remand **(#8)** be **DENIED**.  The parties are advised that any objection to the recommendation must be filed in writing with the clerk within ten working days after service of a copy of this Report and Recommendation.  *See* 28 U.S.C. 636(b)(1).  Failure to object will constitute a waiver of objections on appeal.  *Video Views, Inc. v. Studio 21, Ltd.,* 797 F.2d 538, 539 (7th Cir. 1986).

ENTER this 22nd day of June, 2009.

s/ DAVID G. BERNTHAL
U.S. MAGISTRATE JUDGE
